# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TURN2 SPECIALTY COMPANIES LLC, | § § § § | |
| *Plaintiff,* | | |
| | | |
| v. | § § | Case No. 4:23-CV-00531 |
| | § | |
| XL SPECIALTY INSURANCE CO., | § | |
| *et al.,* | § | |
| *Defendants.* | § | |

## JUDGE PALERMO'S REPORT & RECOMMENDATION

This case arises from a dispute over insurance coverage.[1] Pending before the Court is Plaintiff Turn2 Specialty Companies, LLC's ("Turn2") motion for partial summary judgment against Defendant Everest Indemnity Insurance Co. ("Everest"). ECF No. 56. Turn2 seeks partial summary judgment on three issues: (1) breach of contract, (2) determination of the accrual date on the Prompt Payment of Claims Act ("PPCA") penalty interest, and (3) lack of consent for reimbursement. The first two issues relate to Turn2's claims; the third relates to Everest's counterclaim.

After considering the briefing,[2] the evidence, and the applicable law, the Court concludes that fact disputes preclude summary judgment. Therefore, Turn2's motion

---

[1] The district judge to whom this case is assigned referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. *See* Order, ECF No. 58. A summary judgment motion is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636(b)(1)(B).

[2] Everest responded to the motion, ECF No. 68, and Turn2 filed a reply, ECF No. 73. The Court also held a status conference on April 10, 2024, where counsel argued the pending motion.

for partial summary judgment, ECF No. 56, should be denied.

## I.       BACKGROUND

This insurance dispute concerns coverage questions arising from a chemical release at a refinery that caused the deaths of two Turn2 employees and injuries to many other non-employees. Turn2 was a contractor performing work at the refinery at the time of the release. As a result of the accident, over 70 plaintiffs eventually sued Turn2 in multiple state-court lawsuits. Everest provided the primary and first layer of excess pollution liability insurance.

Turn2 is a provider of various services in the petrochemical industry, such as welding, fabrication, and electrical work.[3] ECF No. 56-12 at 2. Lyondell Chemical Company and other entities under the "Lyondell" label are collectively one of the largest refining conglomerates in the world. *Id.* Lyondell owns and operates a refinery complex in La Porte, Texas, on the Houston Ship Channel. *Id.* Turn2 works at the La Porte complex as a subcontractor for Lyondell pursuant to a Master Field Services Agreement ("MFSA"), which in turn provides coverage under an Owner Controlled Insurance Program ("OCIP"). *Id.* at 1-2. The OCIP policies are supplied

---

[3] The factual background is largely pulled from Everest's February 10, 2023, reservation of rights letter, which both parties attach as an exhibit to their briefing. ECF Nos. 56-12, 68-6. This is by no means intended to be an exhaustive background, but only the basic facts pertinent to Turn2's motion. This case involves multiple insurers and multiple underlying lawsuits, and as the Court noted at the status conference on April 10, 2024, that level of complexity may ultimately preclude the Court from granting summary judgment on any fact-dependent claims.

through XL Specialty Insurance Co. ("XL"). ECF No. 69 ¶¶ 11-13. Turn2 also procured insurance policies through Everest—the Contractor Pollution Liability ("CPL") part of the primary Everest policy provides a $1 million per occurrence and $2 million aggregate limit, while the excess policy provides additional coverage of $5 million per occurrence. ECF No. 56-12 at 13-14. The Everest policies contain a clause requiring reimbursement of any payments for damages or "claims expenses" in excess of insurance limits made with the insured's consent. ECF No. 56-4 at 82.

On July 27, 2021, a leak at the La Porte facility resulted in the release of approximately 100,000 pounds of acetic acid. ECF No. 56-12 at 9. The accident caused the deaths of two Turn2 employees and injuries to many other workers, most of whom were not Turn2 employees. *Id.* Claimants immediately filed personal injury suits against Lyondell and Turn2, and Lyondell then tendered those suits to Turn2 pursuant to the MFSA's indemnity provisions. *Id.* at 9-12; ECF No. 56-3. As of early 2022, the Lyondell litigation was consolidated and transferred to a state multidistrict litigation proceeding. ECF No. 68-4.

Turn2 initially notified both XL and Everest of the accident and pending claims, but XL refused coverage under the OCIP. *See* ECF Nos. 56-5, 56-6, 56-7.[4] Turn2 then submitted its claims information to Everest's third-party claims agent,

---

[4] XL later responded to accept its duty to defend Turn2 under the workers compensation part of the OCIP for claims Turn2 employees filed. ECF No. 69 ¶ 26.

Sedgwick Inc. *See* ECF No. 56-10. On February 14, 2022, Sedgwick responded: "I believe we have received all the information needed to address the 2 complaints filed against Turn2 and the tender request from Lyondell." ECF No. 56-11. Turn2 alleges that it did not hear back from Sedgwick or Everest for almost a year. ECF No. 69 ¶ 101. During that time, additional claimants filed at least ten new complaints in the Lyondell litigation, some joining Turn2 as a defendant. ECF No. 56-12 at 10-12.[5]

On February 10, 2023, Everest agreed to defend Turn2 against claims asserted by non-employees pursuant to a reservation-of-rights letter. ECF No. 56-12. Turn2 filed suit on February 13, 2023, alleging breach of contract and unfair settlement practices. ECF No. 1.[6] Nonetheless, Everest continued to work with and pay Turn2's eligible claims while accepting settlements for the claims asserted against Turn2 in the Lyondell litigation. *See* ECF Nos. 68-9, 68-17. On September 5, 2023, Everest informed Turn2 that its policy limits were nearing exhaustion. ECF No. 68-12. On September 12, 2023, Turn2 sought reimbursement of $527,733.88 in attorney's fees and defense costs by submitting its pre-February 2023 invoices to Everest. ECF No. 68-8. Around that time, Turn2 was aware that only $40,000 remained on the Everest policies. *See* ECF No. 68-13. On November 6, 2023, Turn2's counsel

---

[5] Turn2 eventually faced claims from 71 individual plaintiffs in the Lyondell litigation, including Turn2 employees, non-Turn2 employees, and bystanders. ECF No. 69 ¶ 8. Altogether, 20 separate lawsuits named Turn2 as defendant in the consolidated Lyondell litigation. ECF No. 68-19 ¶ 3.

[6] Turn2 subsequently amended its complaint to allege PPCA violations. ECF No. 35 ¶¶ 76-79.

demanded the immediate payment of $1,165,053.85 to cover defense costs other than attorney's fees that Everest purportedly preapproved. ECF No. 68-14. Everest ultimately paid $1,725,183.00 for defense costs on November 7, 2023, in addition to defense payments of $262,183.58 in August of 2023. ECF No. 68-17. Prior to receiving Everest's payment, Turn2 calculated that Everest owed $1,799,156.17 in unpaid attorney's fees as of November 9, 2023. ECF No. 68-16. However, on January 8, 2024, Everest notified Turn2 that its payments exceeded the policy limits and demanded $1,662,320.57 in reimbursement. ECF No. 56-13.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying "the basis for its motion" and any portions of the record that "demonstrate the absence of a genuine issue of material fact." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quotations omitted). Where the moving party "bears the burden of proof on an issue," such as a plaintiff or counter-plaintiff, it "must establish beyond peradventure *all* of the essential elements" for that claim to be entitled to summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But where the moving party does not bear the burden of proof, summary judgment

is available "simply by disproving the existence of any essential element of the opposing party's claim." *Id.* The burden then shifts to the non-moving party, who must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Davis*, 765 F.3d at 484 (quotations omitted). Summary judgment evidence "must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019).

## III. THE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

In its motion, Turn2 seeks partial summary judgment against Everest on three issues. ECF No. 56. First, Turn2 argues that Everest's one-year delay in accepting its duty to defend constitutes a breach of contract. Turn2 then insists that PPCA penalty interest for delayed payments on defense costs should begin to accrue on the date Everest purportedly had sufficient information to determine its duty to defend. Finally, Turn2 seeks summary judgment on Everest's counterclaim for reimbursement of payments exceeding the primary policy's limits. Turn2 contends that Everest has no evidence of express consent, and therefore the claim fails under the policy and applicable law. As explained below, the Court concludes that Turn2's arguments are unpersuasive, and fact disputes preclude summary judgment.

### A. Turn2 Has Not Shown That Everest's Delay in Accepting Its Duty to Defend Was Unreasonable or a Breach of Contract.

Turn2 moves for partial summary judgment on its claim that Everest breached

the primary policy by not immediately accepting its duty to defend. "The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quotation omitted). For purposes of this motion, the parties do not appear to dispute the first two elements. As Turn2 points out, "There is no fact issue to resolve on whether or not Everest owed a duty to defend because it ultimately accepted its duty." ECF No. 56 at 10. Everest agrees that it owed a duty to defend and contends that it eventually paid out the policy's limits. ECF No. 68 at 24. While the parties dispute what the policy's limits are and whether defense costs erode those limits, those questions of contract interpretation are not before the Court.[7] The parties also do not dispute the approximately one-year delay between February 14, 2022, when Everest via Sedgwick responded to Turn2's request for a defense by stating "we have received all the information needed," ECF No. 56-11, and when Everest explained its coverage position on February 10, 2023,

---

[7] Everest counters that Turn2 did not suffer any damages. ECF No. 68 at 24. It may be the case that Turn2 has suffered no damages, but that question is not before the Court. ECF No. 56 at 11. The sole issue Plaintiff raises on the breach of contract claim is whether Everest's delay in defending constitutes a breach. *Cf. Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 832 (N.D. Tex. 2011) ("In Texas, 'a central element to be proven in an action for the alleged breach of an insurance contract is that the insured has been damaged by the breach and the amount of damages resulting from that breach.'" (quotation omitted)).

ECF No. 68-6. The only question presented is whether Everest's delay in accepting its duty to defend Turn2 under the policy constitutes a breach.

The sole authority Turn2 identifies for the proposition that some delay in agreeing to tender a defense or pay defense costs constitutes a breach is *Yowell v. Seneca Specialty Insurance Co.*, 117 F. Supp. 3d 904, 908 (E.D. Tex. 2015). In that case, the insurer failed to respond to the insured's request for a defense until after the insured filed suit. *Id.* at 907-08. The insurer ultimately accepted its duty to defend, but it "provided no explanation for [its] 140-day delay." *Id.* at 908. The district court noted that, although "Texas state courts have not directly addressed the issue of whether an insurer's delay in agreeing to provide a defense to its insured constitutes a breach of the duty to defend," at least one federal court "has held that unreasonable delay constitutes a breach of the insurance policy under Texas law." *Id.* (citing *Kirby Co. v. Hartford Cas. Ins. Co.*, No. CIV.A. 3:02-CV-1616-L, 2004 WL 2165367, at *4 (N.D. Tex. Sept. 23, 2004)). Because the insurer "failed to tender any summary judgment evidence tending to show that the delay was 'reasonable,'" the district court found the insurer breached its duty to defend. *Id.*

Everest contends that *Yowell* is inapposite. First, Everest accepted its duty to defend three days *before* Turn2 filed suit, unlike the insurer in *Yowell*. ECF No. 68 at 26. Everest's reservation of rights is dated February 10, 2023, ECF No. 56-12, and Turn2 filed suit on February 13, 2023, ECF No. 1. Second, while the insurer in

*Yowell* offered no explanation for the 140-day delay, Everest insists "the changing, multi-party landscape of the Lyondell Litigation is clearly distinguishable." ECF No. 68 at 26-27. Indeed, only two cases against Turn2 were pending on February 14, 2022, when Everest responded to Turn2's defense request by stating "we have received all the information needed." ECF No. 56-11. When Everest accepted its duty to defend a year later, it agreed to defend Turn2 in two additional cases before Turn2 even tendered a request. ECF No. 56-12 at 22. Everest explains that it was also investigating a scrivener's error in the policy while attempting to determine the coverage of other insurance policies. *See id.* at 17-22. Additionally, the Lyondell litigation was rapidly evolving in 2022, which is when all lawsuits were transferred and consolidated into a multidistrict litigation court. *See id.* at 13; ECF No. 68-4. Turn2's motion further acknowledges that there was "some initial confusion over whether Turn2's tower of insurance or a separate insurance program purchased by Lyondell should cover these claims." ECF No. 56 at 7.

Even assuming *Yowell* correctly predicts Texas law, an insurer breaches its duty to defend through "unreasonable delay." 117 F. Supp. 3d at 908. Moreover, "when a controversy exists regarding coverage, that controversy may be a legitimate reason" to excuse some delay. *Centex Homes v. Lexington Ins. Co.*, No. 3:13-CV-719-BN, 2014 WL 2718805, at *17 (N.D. Tex. June 16, 2014), *order vacated in part on reconsideration*, No. 3:13-CV-719-BN, 2014 WL 11515383 (N.D. Tex. Sept. 11,

2014). Where the insurer comes forth with an explanation for that delay, the question

whether that delay is reasonable is one for the trier of fact. *Id.* Because Everest has

come forth with several explanations for the alleged delay,[8] ECF No. 68 at 26-27,

supported by competent evidence, *see, e.g.*, ECF No. 68-17 ¶ 9, summary judgment

on the reasonableness of that delay is inappropriate.

## B.  PPCA Penalty Interest for Defense Costs Does Not Accrue Until the Insured Pays or Submits Invoices for Payment, and Disputed Facts on Breach of Contract Preclude Summary Judgment.

Turn2 next seeks rulings on Everest's liability under the PPCA and the accrual

dates for penalty interest. ECF No. 56 at 11-15. Turn2 argues that interest under the

PPCA "should accrue as of March 19, 2022," when it "retained counsel and incurred

defense costs." *Id.* at 15. Turn2 insists that the PPCA does not "require[] the insured

to submit its invoices to a carrier that *denied* the claim." *Id.* at 14 (emphasis added).

In response, Everest counters that the cases Turn2 relies on only apply where an

insurer has rejected an insured's defense request, which did not occur here. ECF

No. 68 at 28. Even then, Turn2 supplies no evidence of when it submitted defense

invoices to Everest or whether it paid those invoices itself, so Everest insists that no

---

[8] In its reply brief, Turn2 does not argue that Everest's explanations for the year-long delay are unreasonable as a matter of law. ECF No. 73 at 2. Nor does Turn2 identify any authority supporting its contention that an insurer's delay in accepting a duty to defend constitutes a breach when the insurer accepted its duty to defend *before* the insured filed suit. Turn2 offers no evidence that it attempted to follow up with Everest after February of 2022. In contrast, Turn2 alleges that it "pressed XL for a response to its tender" on four occasions in 2022. ECF No. 69 ¶ 24. Turn2 could have similarly pressed Everest, but it apparently did not.

PPCA violation occurred. *Id.* at 28-30. The Court ultimately agrees that Turn2 fails to meet its summary judgment burden.[9]

Under the PPCA, "if an insurer . . . delays payment of [an insured's] claim . . . for more than 60 days, the insurer shall pay damages." TEX. INS. CODE § 542.058(a). This liability only begins to run once the insurer has "receiv[ed] all items, statements, and forms reasonably requested and required" to accept or reject a claim. *Id.*; *see also* TEX. INS. CODE § 542.056(a) (requiring insurer to notify acceptance or rejection of claim within 15 days after receipt of all information "required by the insurer to secure final proof of loss"). The PPCA imposes an 18% per annum rate of penalty interest as damages for violations. TEX. INS. CODE § 542.060(a). However, the PPCA only applies to "first-party claim[s]." TEX. INS. CODE § 542.051(2).

The Texas Supreme Court resolved whether the PPCA applies to claims for defense costs in *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1

---

[9] Further complicating matters, Turn2's argument is essentially that Everest should have prioritized the payment of defense costs over accepting reasonable settlement demands. Turn2 cites no case law, statute, or provision of the insurance policy requiring such preferential treatment. It also fails to cite any evidence supporting such an agreement or understanding between Turn2 and Everest. It appears that, in hindsight, Turn2 realized that it was running out of coverage under the primary policy with mounting unpaid attorneys' fees and counsel belatedly insisted that its fees be paid. To the extent that counsel, on Turn2's behalf, demanded that its own costs be paid before settling Turn2's liabilities, this raises a potential conflict of interest. In either case, it appears on this record that neither Turn2 nor Everest kept an accurate track of what claims had been submitted, approved for payment, and paid, or when. In fact, the evidence indicates that Everest approved payment of certain attorneys' fees or expert costs before committing to fund settlements, but then did not pay the fees or costs until after it had already committed to settlements, leading to the overpayment. A jury, not the Court, will have to sort out the reasonableness of each parties' actions.

(Tex. 2007). The *Lamar Homes* court observed some tension between the PPCA and

defense claims, because "at the time of the claim the insured typically has not yet

suffered any actual loss." *Id.* at 19. Nonetheless, the court reasoned that:

> when the insurer wrongfully rejects its defense obligation, the insured
> has suffered an actual loss that is quantified after the insured retains
> counsel and begins receiving statements for legal services. These
> statements or invoices are the last piece of information needed to put a
> value on the insured's loss. And when the insurer, who owes a defense
> to its insured, fails to pay within the statutory deadline, the insured
> matures its right to reasonable attorney's fees and the eighteen percent
> interest rate specified by the statute.

*Id.* (citations omitted). The Texas Supreme Court agreed that "to mature its rights

under the [PPCA]," the insured must "submit [its] legal bills to the insurance

company, as received." *Id.* Alternatively, if the insurer refused a defense request,

PPCA claims would accrue when the insured "paid each bill for attorney's fees." *Id.*

(quoting *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir.

2004)). Subsequent federal courts applying *Lamar Homes* have reiterated "that an

insurer becomes liable under the statute when it wrongfully rejects its defense

obligation, but . . . prejudgment interest does not begin accruing, until the insured

actually incurs the defense costs." *Trammell Crow Residential Co. v. Virginia Sur.

Co., Inc.*, 643 F. Supp. 2d 844, 859 (N.D. Tex. 2008); *see also Lyda Swinerton

Builders, Inc. v. Oklahoma Sur. Co.*, No. 4:12-CV-1759, 2015 WL 6164087, at *4

(S.D. Tex. July 30, 2015), *rev'd and remanded on other grounds*, 903 F.3d 435 (5th

Cir. 2018) (requiring insured to present "evidence of the dates and amounts it paid

for its defense costs" to determine dates of accrual for PPCA penalty interest).

Turn2 contends that interest begins to accrue "once the insured retains counsel and becomes obligated to pay defense costs." ECF No. 56 at 8. Turn2 calculates that PPCA penalty interest began to accrue on March 19, 2022, which would be 60 days after Everest allegedly "received all information necessary to address the pending claims." *Id.* Turn2 states that it already retained counsel at that point, and "the invoices will be presented at trial." *Id.* at 15. But this is incorrect, as PPCA penalty interest only begins to accrue on defense costs either: (1) when the insured submits invoices to the insurer, *Lamar Homes*, 242 S.W.3d at 19; or (2) when "the insured actually incurs the defense costs," but only after the insurer "wrongfully rejects its defense obligation," *Trammell*, 643 F. Supp. 2d at 859. To the extent Turn2's argument presupposes that Everest effectively wrongfully denied a defense through unreasonable delay, summary judgment is improper for the same reasons as breach, because fact issues on the reasonableness of delay preclude summary judgment.[10]

In its response, Everest counters that it timely paid all invoices for defense costs that Turn2 submitted. ECF No. 68 at 28-29. The primary dispute appears to be Turn2's defense costs for the period before Everest accepted its duty to defend. *See*

---

[10] Indeed, the only cases Turn2 cites in support of this argument pertain to situations where an insurer *affirmatively* denied an insured's defense request, only for a court later find the insurer in breach of the duty to defend. *See* ECF No. 56 at 10-11; *Trammell*, 643 F. Supp. 2d at 849; *Lyda Swinerton*, 2015 WL 6164087, at *4. Turn2 identifies no authority examining when PPCA claims accrue while an insurer is actively investigating whether to accept or reject a defense request.

ECF No. 56-15 (listing attorney's fees statements from August 24, 2021, through February 23, 2023). Everest contends that Turn2 did not submit any invoices pertaining to those costs until September 12, 2023. ECF No. 68 at 28-29; ECF No. 68-8. In reply, Turn2 does not dispute that it waited until September 12, 2023, to submit the invoices to Everest. ECF No. 73 at 2.[11] If the accrual date is based on when the insured submits invoices to the insurer, PPCA penalty interest began accruing 60 days later, on November 11, 2023.[12] However, Turn2 admits that Everest paid these defense costs on November 7, 2023, ECF No. 69 ¶ 32, before the 60-day deadline. Because Everest exhausted the policy limits and paid the defense costs before the deadline, no PPCA violation has occurred. *Cf. Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. CIV.A. 3:06-CV-1576-D, 2009 WL 3074618, at *25 (N.D. Tex. Mar. 30, 2009) (finding no PPCA liability for failure to promptly pay defense costs incurred after policy limits exhausted).[13]

---

[11] Turn2 belatedly attempts to clarify the timeline of events. ECF No. 73 at 4-8. To the extent Turn2 raises new arguments and facts for the first time in its reply, those issues are waived. *See Hernandez v. United States*, 888 F.3d 219, 224 n.1 (5th Cir. 2018).

[12] Turn2 does not argue that Everest violated any of the other PPCA deadlines. *See Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, 795 F.3d 496, 508 (5th Cir. 2015) (concluding that violation of any PPCA deadline triggers accrual of penalty interest). Because Turn2 only relies on the 60-day payment deadline, *see* ECF No. 56 at 13, the Court need not consider other violations.

[13] There is some additional confusion over whether Everest's payment corresponds to Turn2's attorney's fees or other allegedly preapproved defense costs, including expert fees. *See* ECF No. 73 at 4-7. The amounts in various demands at that time, while similar, do not squarely match up with Everest's final payment in November of 2023, *see* ECF Nos. 68-14, 68-16, 68-17, which was apparently approved weeks earlier, *see* ECF No. 73-2. Regardless, it is undisputed that Everest's payment resulted in the exhaustion of policy limits and that any duty to defend ceased at that point.

Everest also argues that, if the accrual date is based on when the insured paid the invoices, "Turn2 fails to present any evidence of when it paid its pre-February 2023 defense invoices." ECF No. 68 at 28 (emphasis removed). As the Texas Supreme Court explained, where the insurer has denied a defense, the accrual date is based on the date when the insured "paid each bill for attorney's fees." *Lamar Homes*, 242 S.W.3d at 19 (quoting *Primrose*, 382 F.3d at 565); *accord Trammell*, 643 F. Supp. at 859 n.17. In other words, if the insured receives an invoice for defense costs and the invoice remains *unpaid*, the insured has suffered no loss and no PPCA claim accrues. *Cf. Primrose*, 382 F.3d at 565 (noting purpose of Texas's prejudgment interest rules are to "accurately reflect the damages incurred by the plaintiff for the lost use of money" (quotation omitted)).

Turn2's only evidence of defense costs is a table purporting to list the dates and amounts of statements for reimbursement. ECF No. 56-15. It is unclear whether those dates refer to when Turn2 received its attorneys' invoices or when Turn2 paid those invoices.[14] However, the full document appears to confirm that the dates in the table correspond with invoice dates. *See* ECF No. 68-8. Turn2 supplies no evidence

---

[14] Everest objects to this exhibit as hearsay and misleading while arguing that Turn2 never paid its counsel and "does not even contend that Everest is responsible to pay these amounts." ECF No. 68 at 18. Indeed, Turn2 has tendered the same invoices to XL for payment without differentiating between cases. *See* ECF Nos. 68-5, 68-8, 68-10. Everest then attaches the full document from which the table of expenses was apparently extracted. *See* ECF No. 68-8. Turn2 thus insists that any defect in its exhibit has been cured by Everest attaching the full document. ECF No. 73 at 2.

that it paid those invoices, and its reply concedes that "the invoices remain[ed] unpaid." ECF No. 73 at 5.[15] Because Turn2 admits that it never paid any of its defense costs, it is not entitled to PPCA penalty interest as it never lost the use of its money. *See Primrose*, 382 F.3d at 565.[16]

Therefore, summary judgment should be denied under either method for calculating the accrual date recognized in *Lamar Homes*.

### C. The Insurance Contract Contains a Reimbursement Clause, and Turn2 Fails to Establish the Contract's Meaning of "Consent."

Turn2 seeks summary judgment on Everest's counterclaim for reimbursement of payments exceeding policy limits. Turn2 does not ask the Court to interpret the policy at this point. ECF No. 56 at 5. Instead, the only questions presented in Turn2's motion are whether Everest obtained Turn2's "clear and unequivocable consent," or whether language in the policy allows such reimbursement. *Id.* at 15. This argument is premised on Texas Supreme Court cases holding "that an insurer could impose a reimbursement obligation on its insured by *either* drafting policies to specifically include a reimbursement right, *or* by obtaining the insured's 'clear and unequivocal

---

[15] Rather than the insured paying its defense costs, it appears that counsel fronted all expert fees. *See* ECF No. 56-16 at 6 ("Branscomb Law has paid all the expert bills in accordance with the expert engagement letters, but it needed to borrow almost a million dollars to do so.").

[16] Everest additionally attaches a letter from counsel for Turn2 purportedly agreeing to "waive this statutory penalty" under the PPCA if Everest paid $1,165,053.85 by November 15, 2023. ECF No. 68-14. Responding to this ultimatum, Everest then paid $1,725,183.00 on November 7, 2023. ECF No. 69 ¶ 32. Further unresolved is how this purported waiver of PPCA penalty interest, whether full or partial, factors into Turn2's claim for PPCA relief.

consent to the settlement and the insurer's right to seek reimbursement.'" *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 46 (Tex. 2008) (emphasis added) (quoting *Tex. Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 135 (Tex. 2000)). Turn2 insists that "[n]either exists in this case." ECF No. 56 at 15.

Everest apparently does not dispute that the record lacks evidence of "clear and unequivocable consent," in writing or otherwise. However, as Everest points out, the policy *does* provide for reimbursement of excess payments. ECF No. 68 at 19. The Everest policy contains the following reimbursement clause:

> If we have paid any amount as a result of this Coverage Part for damages or "claims expenses" in excess of the Limits of Insurance or within the Deductible Amount, you shall be liable to us for such amounts and, upon demand, shall pay such amounts to us. We shall not make any payment in excess of the Limits of Insurance without your consent.

ECF No. 56-4 at 82 (CPL Part § III(6)). This clause appears elsewhere in the policy as well. *See id.* at 91, 110. Relying on that same clause, Everest filed a counterclaim for reimbursement of payments it made in excess of policy limits. *See* ECF Nos. 41 ¶ 29, 76 ¶ 29.

Indeed, Turn2 concedes that the Everest policy does contain a reimbursement clause. ECF No. 56 at 18. That should be the end of this question—because the policy plainly contains a reimbursement clause, Everest is not barred from seeking reimbursement under Texas law. Further, because Turn2 has not asked the Court to

interpret the contract at this juncture, the Court need not proceed any further. Turn2's motion is thus self-defeating.

Yet Turn2 argues that "Everest pulled the rationale behind *Matagorda County* and *Frank's Casing Crew* into its policy language," so the term "consent" in the policy should be construed as requiring "clear and unequivocal consent." ECF No. 56 at 19. Other than Turn2's *ipse dixit*, however, there is no support for this contention.[17] Those cases both dealt with situations where there was no reimbursement right in the contract. *See Frank's Casing Crew*, 246 S.W.3d at 43; *Matagorda County*, 52 S.W.3d at 131. The *Matagorda County* court thus reasoned that "clear and unequivocal consent" was necessary to *create* a reimbursement right where none existed, lest the insurer be allowed "to extract a unilateral amendment to the insurance contract." 52 S.W.3d at 133 (quoting *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 516 (Wyo. 2000)). Instead, because insurers are "in the best position to assess the viability of [any] coverage dispute," insurers should bear the risk when deciding whether to pay out or settle claims that ultimately might not

---

[17] In reply, Turn2 attempts to clarify this argument by noting that "Everest could have included a right of reimbursement that did not require its insured's consent, but it did not do so." ECF No. 73 at 9. Turn2 thus concedes that *Matagorda County* and *Frank's Casing Crew* do not require the insured's consent, much less "clear and unequivocal consent," to enforce a contractual right of reimbursement. Instead, the only question is whether the parties intended to incorporate a different meaning of "consent" in the policy. *Cf. Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022) ("The words of the policy 'are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense.'" (quotation omitted)). This confirms the Court's view that summary judgment is unavailable without first interpreting the policy.

be covered, "either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure." *Id.* at 135-36. Aside from suggesting that insurers *include* an explicit right to reimbursement in their insurance policies, neither *Matagorda County* nor *Frank's Casing Crew* state that "clear and unequivocal consent" is required to enforce an *existing* reimbursement clause.

As Everest points out, the term "consent" is not defined under the policy, although other provisions explicitly require "written consent." ECF No. 68 at 19; *see also* ECF No. 56-4 at 11, 85, 113. Accordingly, interpreting "consent" under the policy as requiring "clear and unequivocable consent" would effectively result in inserting terms into the contract. ECF No. 68 at 20; *cf. ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 415 (5th Cir. 2017) ("Courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." (cleaned up)). While Everest argues the term "consent" should be given its plain and ordinary meaning, ECF No. 68 at 19, Everest does not seek summary judgment on its reimbursement claim. Moreover, neither party presents the Court with sufficient background to conclusively interpret the insurance policy. *See ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) ("Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the

contract as a whole in light of the circumstances present when the contract was entered.'" (quotation omitted)). The Court therefore declines to reach any issues of contract interpretation, which the parties have not fully briefed.[18]

Even if the Court were to adopt Turn2's unsupported interpretation, whether Turn2 provided "clear and unequivocal consent" to Everest's overpayment cannot be resolved on the current briefing. Turn2 does not contend that written consent is required. *See* ECF No. 73 at 9 n.2. Instead, Turn2 argues that it is entitled to summary judgment because the record contains no "correspondence between Everest and Turn2 whereby Everest informs Turn2 that it will make a payment in excess of the Limits of Insurance and requests Turn2's consent for such overpayment." ECF No. 56 at 20. In reply, Turn2 defines "clear and unequivocal consent" as requiring at a minimum "the insured's 'capable, deliberate and voluntary agreement.'" ECF No. 73 at 10. Turn2 thus explains that consent does not exist where Everest "approv[ed] defense costs without communicating the effect to the insured." *Id.* Even assuming this is what the policy requires, Everest submits an affidavit stating that it did just that. *See* ECF No. 68-19 ¶¶ 7-13 (recounting phone call where Turn2's counsel confirmed awareness of Everest's remaining policy limits and that defense

---

[18] Although the Court does not yet have all the facts, much of this dispute appears to be the result of cross-communication, with different attorneys and claims adjusters working on different claims while simultaneously pursuing litigation and settlement tracks, resulting in the left hand not knowing what the right hand is doing.

costs erode policy limits but requested payment regardless). In fact, at the outset Everest set forth its position that defense costs erode policy limits in its reservation of rights letter. ECF No. 56-12 at 18 & n.28 (noting "claims expenses" include defense costs under CPL part and erode policy limits). Factual disputes thus preclude summary judgment on the issue of Turn2's consent even under its preferred interpretation of "consent." Regardless, at this stage, it is enough for the Court to conclude that the policy *does* contain a reimbursement clause, so Turn2's motion for summary judgment on Everest's counterclaim must be denied.

## IV.   CONCLUSION

For those reasons, the Court **RECOMMENDS** that Turn2's motion for partial summary judgment, ECF No. 56, be **DENIED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

**IT IS SO ORDERED.**

Signed on June 18, 2024, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**